UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAREY LICENSING, INC., and CAREY INTERNATIONAL, INC. ) ) ) Plaintiffs, ) ) vs. ) ) JACK ERLICH and INTERNATIONAL ) CHAUFFEURED SERVICES, INC., ) ) Defendants. ) | Case No. 4:05CV1194 AGF |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Plaintiffs' motion to cite Defendants for contempt for violation of a Consent Judgment entered in the case. A hearing on the record was held on the motion on September 11, 2007. There is no continuing violation at this point, and the only issue before the Court is Plaintiffs' entitlement to liquidated damages and/or attorney's fees for past violations.

## PROCEDURAL HISTORY

On August 1, 2005, Plaintiffs filed a complaint and a motion for a preliminary injunction, alleging that Defendants, a competing limousine services company and the company's operator, willfully infringed Plaintiffs' trademark CAREY and engaged in unfair competition by using the name or mark CAREY (or similar names) in advertisements, on Defendants' website, and in accepting telephone reservations.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

On September 15, 2005, Defendants consented to the entry of a consent judgment against them, and, on October 12, 2005, the Court entered the Consent Judgment drafted and agreed to by the parties. The Consent Judgment can be divided into several sections: paragraphs 1 to 7 contain stipulated facts; paragraph 8 permanently enjoins Defendants from various acts; in paragraphs 9 to 13 Defendants represent and warrant to have taken certain actions respecting materials, websites, hyperlinks, telephone numbers, and directory listings; paragraphs 14 and 15 set out various remedies; and paragraphs 16 to 20 set out the Consent Judgment's binding effect and the parties' authority to enter into it. The provisions relevant to the Court's determination of the issues in this case are laid out with greater specificity below.

Paragraph 8 of the Consent Judgment permanently enjoins Defendants from: (1) Using the mark CAREY, and the name "Carey Limousine," and any similar mark and/or name "in any manner in connection with the rendering and/or advertising of" limousine or similar services, "including, but not limited to, in . . . websites, website names and domain names"; (2) "Registering, purchasing, selling, owning or transferring any domain name that contains the mark CAREY and any other" similar term; (3) securing any phone-directory listing under the name "Carey" or any similar name; and (4) "Doing any other act or thing calculated or likely to cause the public to be confused or deceived into believing that Defendants' limousine services originate from, are affiliated with or are sponsored by Carey, or that Defendants have a connection with Carey."

In paragraphs 10 and 11 of the Consent Judgment, Defendants warranted that, among other things, they had: (1) "removed from all websites owned and/or controlled by

them including, but not limited to, InternationalChauffeuredServices.com, all references to CAREY" and any other similar mark and/or name; and (2) "removed all references to CAREY" and any other similar mark and/or name "from all sponsored links and hyperlinks reasonably known to them as of the date of this Consent Judgment." In addition, Defendants agreed to "take action to remove any additional references to CAREY from any additional sponsored links or hyperlinks, if any, within 24 hours of being advised of such additional sponsored links or hyperlinks by Plaintiffs."

In paragraph 14 of the Consent Judgment, the parties agreed that "if Defendants violate any provision of this Consent Judgment," Defendants: (1) "consent to an injunction or injunctions to compel specific performance of the provisions of this Consent Judgment"; (2) "shall be jointly and severally liable to pay the Plaintiffs' reasonable attorney's fees incurred by Plaintiffs in connection with this lawsuit and in any subsequent lawsuits or other enforcement measures under this Consent Judgment," with the "reasonableness of the amount of Plaintiffs' fees and costs [to] be determined by the Court unless otherwise agreed to by the parties"; and (3) "will not challenge Plaintiffs' entitlement to such fees and costs in the event of such breach."

Finally, in paragraph 15 of the Consent Judgment, the parties agreed that, "Should a Court of competent jurisdiction find Defendants to have infringed upon the service mark and trade name CAREY for any acts subsequent to the date of entry of this Consent Judgment, in addition to any other legal or equitable remedy Carey may have, [Defendants] will pay Carey . . . $2,500[] as liquidated damages for each instance of infringement therein found, such payment to be made within thirty (30) days of a final

judgment, including the exhaustion of all appeals."

## FACTUAL BACKGROUND

### A. The Domain Name

The record establishes that, on February 9, 2007, at 10:45 a.m.,[2] Plaintiffs' counsel Sara Edelman notified Defendants' counsel Frank Janoski by e-mail that Defendants had registered the domain name careylimousine.net in violation of the Consent Judgment. Plaintiffs demanded that Defendants transfer ownership of the domain name to Plaintiffs. (Pls.' Ex. 6.) On February 12, at 8:21 p.m., Plaintiffs' counsel sent an e-mail to Defendants' counsel, demanding a response. (Pls.' Ex. 7.) On February 15, at 2:52 p.m., Plaintiffs' counsel again sent an e-mail to Defendants' counsel, carbon copying Defendant Jack Erlich. (Pls.' Ex. 7.) Twenty minutes later, at 3:12 p.m., Defendants' counsel sent an e-mail response to Plaintiffs' counsel, notifying Plaintiffs that Mr. Erlich "has taken steps to have the domain name cancelled." (Pls.' Ex. 8.) Shortly thereafter, at 3:18 p.m., Plaintiffs' counsel sent an e-mail reply to Defendants' counsel demanding that Defendants transfer ownership of the domain name careylimousine.net to Plaintiffs. Thirty minutes later, at 3:48 p.m., Defendants' counsel sent an e-mail response to Plaintiffs' counsel notifying Plaintiffs that Defendants had "already cancelled the domain name."

### B. The Google and Yahoo Hyperlinks

On February 15, 2007, at 3:18 p.m., in the e-mail message noted above,

---

[2] Unless otherwise indicated, all times are presumed to be in Eastern Standard Time.

Plaintiffs' counsel also notified Defendants' counsel that a hyperlink to one of Defendants' websites appeared in Google search results when a search for "careylimousine nyc" was performed. (Pls.' Ex. 9.) Thirty minutes later, in the 3:48 e-mail response noted above, Defendants' counsel responded that Defendants would "check into the use of the 'careylimousine nyc.'" (Pls.' Ex. 10.)

On Friday, March 2, 2007, at 7:27 p.m., Plaintiffs' counsel sent an e-mail to Defendants' counsel, again carbon copying Mr. Erlich. Attached to the e-mail was a letter demanding that Defendants "immediately cease and desist from infringing my client's trademark." (Pls.' Ex. 11.) In that letter, Plaintiffs' counsel cited two violations of the Consent Judgment: (1) respecting Google, that Mr. Erlich "purchased the key word 'Cary' and used this term to describe International Chauffeured Services in the 'sponsored link' that he purchased";[3] and (2) respecting Yahoo, that Mr. Erlich "use[d] the mark CAREY® in a hyperlink to his company, 'limocenter.us.'" On March 7, 2007, at 9:24 a.m. (Central), Plaintiffs' counsel sent another e-mail, demanding a response. (Defs.' Resp. Ex. A, Tab 4.) Later that day, at 5:53 p.m. (Central), Defendants' counsel responded, notifying Plaintiffs counsel that Defendants had contacted Google about

---

[3] Plaintiffs have not included this alleged violation in their motion to cite Defendants for civil contempt. In the March 2, 2007 e-mail, Plaintiffs included an exhibit showing what might be sponsored links with the name "Cary" to www.internationalchauffeuredservice.com. In their memorandum in support of their motion, Plaintiffs aver that Defendants have "unlawfully included the CAREY® mark in the hyperlink 'Carey Limousine NYC' which links to Defendants' website located at www.internationalchauffeuredservices.com." (Pls.' Mot. 2.) In support, Plaintiffs do not include the March 2, 2007 exhibit, but rather a printout of Google "Plus Box" map data with the name "Carey." (Pls.' Ex. 2.)

removing Carey Limousine from www.limocenter.com, and that Defendants had looked at the source code of the website appearing in Yahoo search results and did not see any key words or meta tags for "Carey."  (Defs.' Resp. Ex. A, Tab 4.)

On March 21, 2007, at 4:38 p.m., Plaintiffs' counsel again sent an e-mail message to Defendants' counsel.  In that e-mail, Plaintiffs noted that "it appears that your client continues to unlawfully include CAREY in a hyperlink to its website," and included a screenshot displaying a hyperlink in Google "Plus Box" map data, for "Carey Limousine NYC," to www.internationalchauffeuredservices.com.  (Pls.' Ex. 12.)  The next day, on March 22, 2007, at 3:29 p.m., Plaintiffs' counsel sent an e-mail to Defendants' counsel, carbon copying Mr. Erlich.  In that e-mail, Plaintiffs' counsel noted that Defendants' counsel was out of the office[4] and asserted, "I am copying your client on this e-mail so that he can take the action I request in my e-mail below immediately." (Pls.' Ex. 13.)  On April 17, 2007, at 9:49 p.m., Plaintiffs' counsel sent an e-mail to Defendants' counsel, noting a hyperlink in Google "Plus Box" map data, for "Carey Limousine NYC," to www.internationalchauffeuredservices.com.  (Pls.' Ex. 14.)

On July 19, 2007, Plaintiffs filed the present motion to cite Defendants for civil contempt.  Plaintiffs assert that Defendants violated the Consent Judgment in three ways: (1) by continuing to own the domain name careylimousine.net; (2) by including the mark CAREY in hyperlinks to Defendants' website www.internationalchauffeuredservices.com

---

[4] The Court notes that defense counsel Mr. Janoski suffered a family tragedy on March 18, 2007, when his wife died.  The Court further notes that Defendants' other counsel, Bridget Hoy, was on maternity leave during this period of time, effective January 29, 2007.

(in Google); and (3) by including the mark CAREY in hyperlinks to Defendants' website www.limocenter.us (in Yahoo). Plaintiffs allege that they contacted Defendants about the domain infringement on February 9, 2007, about the Google hyperlink infringement on February 15, 2007, and about the Yahoo hyperlink infringement on March 2, 2007. Plaintiffs ask the Court to find Defendants in civil contempt; to order specific performance, including Defendants' removal of the hyperlinks and transfer of the domain name to Plaintiffs; and to order payment of liquidated damages in the amount of $7,500, representing three acts of infringement, at $2,500 each, and fees, pursuant to the Consent Judgment.

In its response dated July 30, 2007, Defendants argue that use of the complained-of domain name "ceased well before" the filing of the contempt motion, and that with regard to the alleged hyperlink infringements, that Plaintiffs have not updated their evidence since January 2007, and have "misapprehended the nature of search engine results." Specifically, Defendants allege: (1) that after Plaintiffs notified them on February 9, 2007, of a domain name infringement, Defendants cancelled their ownership of the domain name careylimousine.net, effective February 15, 2007, and that the WHOIS report consulted by Plaintiffs showing Defendants as the owner was last updated on January 29, 2007; and that transferring ownership of the domain name careylimousine.net to Plaintiffs would violate the terms of the Consent Judgment; (2) that the Google hyperlink "Carey Limousine NYC" to Defendants' website www.internationalchauffeuredservices.com is actually "Plus Box" map data listed in Google search results, as opposed to a paid advertisement placed by Defendants; and on

7

the same day that Plaintiffs notified Defendants of the Google mark infringement, February 15, 2007, Defendants contacted Google to remove the listing and were told that the listing would change when Google next updated its servers (as evidenced by Mr. Erlich's affidavit dated July 30, 2007); and (3) the Yahoo hyperlink to www.limocenter.us for "Carey Limousine" was actually in Yahoo search results, as opposed to a paid advertisement placed by Defendants; on March 7, 2007, Defendants notified Plaintiffs that they had contacted Yahoo to remove the listing (also as evidenced by the July 30, 2007 affidavit); and, as exhibited by Defendants' July 27, 2007 screenshot, those results are no longer generated by a Yahoo search.

In its reply dated August 9, 2007, Plaintiffs: (1) complain that Defendants waited 16 months before cancelling their ownership of the domain name careylimousince.net, in violation of the Consent Judgment; (2) reject Defendants' contention that the hyperlink to www.internationalchauffeuredservices.com, for "Carey Limousine NYC," is automatically generated Google "Plus Box" map data, arguing instead that the link was provided through the "Google Maps" feature and that such a feature required Defendants' input; and (3) note that Defendants took longer than the 24 hours permitted under the Consent Judgment to remove the hyperlink to www.limocenter.us, for "Carey Limousine," from the Yahoo search results database, and that Defendants' counsel did not reply within five days to Plaintiffs' notice of the Yahoo infringement.

At the September 11, 2007 hearing on Plaintiffs' contempt motion, the parties notified the Court that Defendants transferred ownership of the domain name

careylimousine.net to the Plaintiffs during the week of September 3, 2007. Plaintiffs further conceded that Defendants had never "used" the domain name. Additionally, Plaintiffs admitted they did not reasonably expect Defendants' immediate response to the e-mail sent on the night of Friday, March 2, 2007. Finally, Plaintiffs admitted that they do not know how Google gathers its information.

## DISCUSSION

The Court has jurisdiction over the present motion, as the parties provided in paragraph 19 of the Consent Judgment that "the Court shall retain jurisdiction to enforce the terms of the Consent Judgment." See Kokkones v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994).

Plaintiffs have "the burden of proving a violation of the consent decree by clear and convincing evidence." See Hazen v. Reagan, 16 F.3d 921, 925 (8th Cir. 1998); see also Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000) ("A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order."); Kansas City Power & Light Co. v. NLRB, 137 F.2d 77, 79 (8th Cir. 1943) ("The rule is that contempt need not be shown beyond a reasonable doubt but that something more than a bare preponderance of evidence is necessary."). "The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." Mahers v. Hedgepeth, 32 F.3d 1273, 1275 (8th Cir. 1994). "If a defendant's actions are based on a good faith and reasonable interpretation of the consent judgment, he should not be held in contempt." Chase Indus., Inc., Durus Div. v. Frommelt Indus., Inc., 806 F. Supp. 1381, 1386 (N.D. Iowa 1992)

9

(citing Vertex Distrib. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)).

Paragraph 20 of the Consent Judgment provided that it should be "construed in accordance with the laws of the State of Missouri." Under Missouri law, "[a] consent judgment is contractual in nature; thus, to the extent that a consent judgment requires interpretation, rules governing the interpretation of contracts apply." Caldwell v. Heritage House Realty, Inc., 32 S.W.3d 773, 775-76 (Mo. Ct. App. 2000). Under Missouri law:

> In determining the intent of the parties to a contract, we review the terms of a contract as a whole, not in isolation. In addition, each term is construed to avoid an effect which renders other terms meaningless. And, we note that people are presumed not to intend nullities. To the contrary, the preferred construction is one that provides a reasonable meaning to each phrase and clause, not one that leaves some of the provisions without function or sense.

Tuttle v. Muenks, 21 S.W.3d 6, 11-12 (Mo. Ct. App. 2000) (citations omitted).

**A. The Domain Name**

The record indicates that Defendants owned the domain name in question from January 25, 2005, until the week of September 3, 2007. Defendants registered the domain name for four years, effective January 25, 2005. (Pls.' Ex. 7.) On October 12, 2005, when the Court entered the Consent Judgment, Defendants still owned the domain name. On February 9, 2007, when Plaintiffs notified Defendants of the violation, Defendants still owned the domain name. And on February 15, 2007, after Defendants cancelled their service agreement with the service provider hosting the domain name and when Defendants notified Plaintiffs that they had cancelled their ownership of the domain name, Defendants nonetheless still owned the domain name. Defendants' continued

ownership is reflected both on the notice from the service provider, and by the fact Defendants were able, thereafter, to transfer it to Plaintiffs. Defendants did not cease to own the domain name until they transferred it to Plaintiffs one week before the hearing on the present motion.

The Court finds that Plaintiffs have shown by clear and convincing evidence that the domain name careylimousine.net is a "domain name that contains the mark CAREY," and that the Defendants owned it in violation of paragraph 8 of the Consent Judgment. Defendants have not shown that a good faith and reasonable interpretation of the Consent Judgment exempts their ownership of the domain name. Defendants' counsel's statement at the motion hearing that Defendants' continued ownership was inadvertent, is not evidence. Such a statement is not in Defendants' affidavit, nor is it reflected in other evidence before the Court. Thus, the Court need not decide what impact inadvertent ownership may have. The Court therefore finds Defendants in contempt for their violation of paragraph 8(ii) of the Consent Judgment.

The Consent Judgment establishes two remedies for violations thereof. First, paragraph 14 provides for the award of reasonable attorney's fees if Defendants violate "any provision of this Consent Judgment." Having shown such a violation, the Court finds that Plaintiffs are entitled to an award of reasonable fees for this violation with respect to the domain name.

In addition to the attorney's fees set forth in paragraph 14, paragraph 15 entitles Plaintiffs to liquidated damages if a Court of competent jurisdiction finds that Defendants "infringed upon" Plaintiffs' mark by means of "any acts subsequent to the

date of entry of this Consent Judgment." In using the term "infringed" here, and in referring to "each instance of infringement" later in the sentence, the parties appear to be limiting the range of enjoined activities contemplated by the liquidated damages provision to those which would constitute trademark infringement. Therefore, Plaintiffs are only entitled to liquidated damages under this provision if they show that Defendants' breach constituted infringement.[5]

Trademark infringement is defined by sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a)(1), and requires a finding of "use in commerce." As noted above, at the motion hearing, Plaintiffs conceded that there has been no "use." Further, courts applying the Lanham Act to cases involving domain name registration have universally held that ownership, without more, does not constitute use.[6] See Cline v. 1-888-Plumbing Group, Inc., 146 F. Supp. 2d 351, 369 (S.D.N.Y. 2001) ("In the context of internet domain names, parties encroach on a registrant's rights under § 32(1) of the Lanham Act not when they reserve a domain name likely to be confused with the registered mark, but when they use it."); HQM, Ltd. v. Hatfield, 71 F. Supp. 2d 500, 507

---

[5] The Court recognizes that the second sentence of paragraph 15 states that "under the circumstances here present," $2,500 is a reasonable forecast of harm for "a breach," without specifying that the breach constitute an infringement. The Court, however, believes that this sentence must be read in light of the terms, "infringed" and "infringement," which appear in the first sentence of the paragraph, to avoid rendering those terms meaningless.

[6] The Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), provides a civil cause of action to the owner of a mark against those who register, traffic in, or use distinctive or famous domain names with a bad faith intent to profit from that mark. In their complaint, plaintiffs did not allege any violation under the ACPA, nor did they incorporate its language into the Consent Judgment.

(D. Md. 1999) (finding that "nearly every Court to have decided whether mere registration or activation of a domain name constitutes 'commercial use' has rejected such arguments"); Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 961 (C.D. Cal. 1997) ("The registration of a domain name, without more, does not amount to infringement of a mark similar to the name."). The Court finds that Defendants' ownership, without more, does not constitute infringement, and that an award of liquidated damages for infringement is not warranted in this case.

**B. The Google Hyperlink**

The record indicates that, prior to filing the present motion, Plaintiffs notified Defendants of violative hyperlinks in Google search results on February 15, March 2, March 21, March 22, and April 17, 2007. (Pls.' Exs. 9, 11, 12, 13, 14.) By affidavit, Mr. Erlich attested that he "contacted Google" on the "same day" that Plaintiffs initially notified him Plaintiffs had found such hyperlinks in Google search results, and that he "called Google immediately" after learning that Plaintiffs filed the present motion. (Defs.' Resp. Ex. B.)

The Court finds that Plaintiffs have not shown by clear and convincing evidence that Defendants violated any term of the Consent Judgment for acts in connection with the hyperlinks found in Google search results. Plaintiffs have not shown that the hyperlinks in Google search results were caused by Defendants' affirmative acts, nor have they shown that Defendants' response to Plaintiffs' notification constituted insufficient compliance with the terms of the Consent Judgment.

In paragraph 8(i) of the Consent Judgment, Defendants were enjoined from

"[u]sing" the mark CAREY, and the name "Carey Limousine," and any similar mark and/or name "in any manner in connection with the rendering and/or advertising of" limousine or similar services. In paragraph 8(iv), Defendants were enjoined from "[d]oing any other act or thing calculated or likely to cause the public to be confused or deceived." The verbs "using" and "doing" are not passive. The Court finds that a reasonable interpretation of paragraphs 8(i) and 8(iv) must construe the verbs to require affirmative acts.

Plaintiffs submitted documents from Google, which indicate that "Plus Box" map data may either be (1) automatically generated by Google or (2) submitted by business owners through Google's Local Business Center. (Pls.' Reply Exs. 2, 3.) Plaintiffs have not presented any evidence that Defendants submitted information through Google's Local Business Center, or even that Defendants used the mark CAREY in the hyperlinked website's source code. Instead, Plaintiffs argue that Defendants must have submitted the information through Google's Local Business Center, as Google would not otherwise have had means to associate the mark CAREY with the website at issue, www.internationalchauffeuredservices.com. The Court finds that Plaintiffs may not rely on such a presumption where the relevant standard for contempt, coupled with the language of the Consent Judgment, requires clear and convincing evidence of a violation by affirmative acts. This is especially so where, as here, Plaintiffs admit they do not know how Google got its information, and it is quite possible, in light of the evidence presented, that Google generated it automatically. As such, the Court finds that Plaintiffs have not met their burden with respect to the hyperlink found in Google.

In addition, Plaintiffs have not shown that Defendants violated the Consent Judgment by failing to take action with respect to these hyperlinks. In paragraph 11 of the Consent Judgment, Defendants agreed to "take action to remove any additional references to CAREY from any additional sponsored links or hyperlinks, if any, within 24 hours of being advised of such additional sponsored links or hyperlinks by Plaintiffs." Defendants assert that "[t]his provision was inserted in the Consent Judgment specifically because of the complex workings of the Internet, including the use of cookies and the nature of high-tech search engines, all of which are beyond Defendants' control." (Defs.' Resp. 2.) Defendants argue that when "first notified that Defendants' contact information was being displayed . . . Defendants took steps to contact Google and have the reference removed"; "repeated those steps promptly upon learning that the issue had not been resolved to Plaintiffs' satisfaction"; and relied upon Google's assertions that "the display in the search results would not be changed until Google updated its servers." (Defs.' Resp. 3.) Mr. Erlich so avers in his affidavit, and Plaintiffs have not presented any contrary evidence. It would be an unreasonable interpretation of the Consent Judgment to find that Defendants' conduct or lack thereof rose to the level of contempt. The Court finds that Defendants' actions here were based on a good faith and reasonable interpretation of the Consent Judgment, consistent with its original context and surrounding circumstances.

In sum, the Court finds that Plaintiffs have not met their burden of showing Defendants violated the Consent Judgment by causing links to appear in Google search results, or by failing to take reasonable steps to remedy the appearance of links in Google

15

search results.

**C. The Yahoo Hyperlink**

The record indicates that, prior to filing the present motion, Plaintiffs notified Defendants on the night of Friday, March 2, 2007, of violative hyperlinks in Yahoo search results. (Pls.' Ex. 11.) Defendants' March 7, 2007 e-mail response omits mention of Defendants' having contacted Yahoo. (Defs.' Resp. Ex. A, Tab 4.) However, by affidavit, Mr. Erlich attested that he "checked the source code" and "contacted Yahoo" on the "same day" he was notified by Plaintiffs of the problem, and that he "again checked the source code and contacted Yahoo" after learning that Plaintiffs filed the present motion. (Defs.' Resp. Ex. B.)

The Court finds that Plaintiffs have not shown by clear and convincing evidence that Defendants violated any term of the Consent Judgment for acts in connection with the hyperlinks found in Yahoo search results. Plaintiffs have not shown that the hyperlinks were caused to be in Yahoo search results by Defendants' affirmative acts, nor have they shown that Defendants' response to Plaintiffs' notification constituted insufficient compliance with the terms of the Consent Judgment. The Court interprets paragraphs 8(i) and 8(iv) here, in the same manner as above, to require affirmative acts.

Plaintiffs further allege that "Erlich admits that in violation of the Order, he used the CAREY® mark in the hyperlink 'Carey Limousine' which linked to the website of his competing limousine company located at www.limocenter.us." (Pls.' Reply 3). Plaintiffs do not explain, nor does the Court discern, where they find this admission. Plaintiffs' argument seems to be that Defendants' request to have Yahoo remove the

16

hyperlink is a tacit admission that Defendants caused the hyperlinks to appear in the first place. But, paragraph 11 of the Consent Judgment obligates Defendants "to take action to remove all references to CAREY from any additional sponsored links or hyperlinks, if any, within 24 hours of being advised of such additional sponsored links or hyperlinks by Plaintiffs." Thus, the Consent Judgment creates an obligation for Defendants to remedy the appearance of hyperlinks, regardless of Defendants' causal role in those appearances. Defendants' actions in conformity with the Consent Judgment and under threat of contempt can hardly equate to an admission of liability. Plaintiffs have not presented any evidence that Defendants submitted information to Yahoo, or even that Defendants used the mark CAREY in the hyperlinked website's source code.

Nor have Plaintiffs shown that Defendants violated the Consent Judgment by failing to take action pursuant to its terms concerning the Yahoo hyperlinks. As noted in the discussion regarding the hyperlinks in Google search results, paragraph 11 of the Consent Judgment required Defendants to take reasonable steps to remedy the appearance of Yahoo hyperlinks within 24 hours of being notified by the Plaintiffs. Plaintiffs' counsel sent an e-mail to Defendants' counsel advising him of the Yahoo hyperlinks late on a Friday night. At the motion hearing, Plaintiffs' counsel admitted that she did not expect a response over the weekend. The earliest it is reasonable to assume receipt of this notice by Defendants' counsel is Monday morning. The 24-hour period within which the Consent Judgment required Defendants "to take action" would have lasted until Tuesday morning, at a minimum. Defendants argue that they "contacted the search engine to have the hyperlink removed" sometime on or before Wednesday, March 7,

2007. (Defs.' Resp. 4.) Mr. Erlich so avers in his affidavit, and Plaintiffs have not presented any contrary evidence. It would be an unreasonable interpretation of the Consent Judgment to find that Defendants' conduct or lack thereof rose to the level of contempt. The Court finds that Defendants' actions here were based on a good faith and reasonable interpretation of the Consent Judgment, consistent with its original context and surrounding circumstances.

### D. Award of Reasonable Attorney's Fees

In accordance with paragraph 14, the Court awards Plaintiffs reasonable attorney's fees in the amount of $500 for Defendants' violative ownership of the domain name. The Court finds this amount to be reasonable for several reasons. First, as set forth above, the continued ownership, but not use, of the domain name is the sole violation of the Consent Judgment shown by Plaintiffs. As such, a substantial portion of Plaintiffs' fees are attributable to claims on which Plaintiffs have not prevailed. Even with respect to the domain name, a portion of Plaintiffs' fees are attributable to Plaintiffs' insistence that the domain name be transferred to Plaintiffs -- rather than cancelled -- a right Plaintiffs did not have under the Consent Judgment. Moreover, upon notification, Defendants promptly took steps to cancel the service agreement, and further cancellation of the domain name itself (rather than transfer) could likely have been achieved without resort to the Court. Under all the circumstances, and based on the record as a whole, the Court finds a fee of $500 to be reasonable.

## CONCLUSION

In sum, Defendants owned the domain name at issue in violation of the Consent Judgment, but Defendants did not infringe Plaintiffs' mark merely by owning that domain name. Plaintiffs have not met their burden of showing that Defendants contemptuously caused hyperlinks to appear in Google or Yahoo search results, or that Defendants failed to take reasonable steps to remedy the appearance of those hyperlinks.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to cite Defendants for contempt is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded attorney's fees in the amount of $500.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of October, 2007.